■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEWIS MOORE, Also Known as LEWIS WILLIAMSON, Appellant. —Appeal by the defendant from a judgment of the County Court, Orange County (Pano Patsalos, J.), rendered May 11, 1989, convicting him of criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress a shotgun and statements made by him to the police.

Ordered that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and statements are granted, the indictment is dismissed, and the matter is remitted to the County Court, Orange County for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On the evening of March 7, 1988, the police received a report that a woman had been shot during a purported robbery. The police interviewed the victim at a hospital together with her boyfriend, the defendant herein. The defendant appeared belligerent and indicated that he would find the perpetrator, who he did not name, and take matters into his own hands. The police advised the victim and the defendant to go home and rest so that they could look through photographs the following morning.

In the early morning hours of March 8, 1988, the police observed the victim parked in her car, near a local welfare hotel which was known to be the scene of prostitution and drug usage. The police observed another passenger in the car, who they could not identify, during several cruises past the car. Eventually, they noticed that the passenger, who they assumed was the defendant, had left the car, and surmised that he had probably entered the hotel. Upon entering the hotel, the police observed the defendant wearing a trench coat and walking down the stairs behind a reputed drug dealer. The defendant appeared "a little frantic" and generally fit a week-old police report of a shotgun-carrying individual who had worn a trench coat. Based on these factors, the defendant's demeanor at the hospital, and the "hunch" that the defendant had found the perpetrator of the attack on his girlfriend and was marching him out for execution, the police, without any preliminary inquiry, forced the defendant up against a column in the hotel lobby. A shotgun was recovered from his person and inculpatory statements were made.

The facts as testified to do not justify the conclusion that the police possessed reasonable suspicion to forcibly stop the defendant (People v De Bour, 40 NY2d 210, 223; CPL 140.50). Although the defendant seemed belligerent when initially interviewed at the hospital with his girlfriend and told the police that he was eager to find and punish his girlfriend's attacker, the police had no indication who that individual was. The defendant did appear a little frantic when he was seen by the police several hours later in the hotel, but was merely walking down the steps behind another individual at that time. The defendant was one of many people in Newburgh

who fit the description on a week-old police report of a shotgun-carrying man wearing a trench coat. In short, the police action here was based essentially on vague or unparticularized hunches which did not satisfy constitutional standards (see, People v Earl, 40 NY2d 941; People v De Bour, supra). Since the defendant's statements and the shotgun were the fruits of this illegal seizure, they must be suppressed. Mangano, P. J., Brown, Sullivan and Eiber, JJ., concur.